**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No.  CV-12-01083-PHX-DGC (SPL) |
| Plaintiff/Respondent, | (No.  CR-08-00611-2-PHX-DGC) |
| vs. | **REPORT AND RECOMMENDATION** |
| Carlos Alvarez-Espinoza, | |
| Defendant/Movant. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

Movant Carlos Alvarez-Espinoza, who is represented by attorney Michele R. Moretti, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CRDoc. 388, CVDoc. 1).[1]

**BACKGROUND**

On January 7, 2009, a federal grand jury returned a superseding indictment against Movant, charging him with fifteen felony counts. (CRDoc. 71.) Jury trial commenced in Movant's case on June 15, 2009, at which time the Government moved to dismiss two counts (Counts 3 and 11). (CRDoc. 202.) The Government sought to prove at trial that in May of 2008, Movant and four co-defendants harbored approximately 21 smuggled

---

[1] Documents filed in CV-12-01083-PHX-DGC will be referred to as "CVDoc" and documents filed in the related criminal action, CR-08-00611-PHX-DGC, will be referred to as "CRDoc."

aliens[2] at a residence located in Phoenix, Arizona. Movant and his co-defendants, at gunpoint, also detained these aliens, and threatened to kill, injure or continue to detain the aliens in order to compel a third person to pay money for their release. (CRDoc. 71.) After five days of trial, on June 19, 2009, the jury found Movant guilty of all remaining charges: Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203 (Counts 1); Hostage Taking, in violation of 18 U.S.C. § 1203 (Counts 2 and 4-7); Conspiracy to Harbor Illegal Aliens, in violation of 18 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(I), and (a)(1)(B)(i) (Count 8); Harboring Illegal Aliens, in violation of 18 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i) (Count 9); and Use and Carrying a Firearm in Relation to a Crime of Violence, and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Counts 10 and 12-15). (CRDoc. 216, 221.)

On October 19, 2009, the District Court imposed sentences totaling in combination of 1644 months (137 years) of imprisonment. (CRDoc. 275, 280.) Specifically, Movant was sentenced to: 30 years of imprisonment on each of Counts 1, 2, 4, 5, 6, and 7, to run concurrently to each other; 10 years of imprisonment on each of Counts 8 and 9 to run concurrently to each other and concurrently to Counts 1, 2, 4, 5, 6 and 7; 7 years of imprisonment on Count 10, to run consecutively to all other counts, and 25 years of imprisonment on each of Counts 12, 13, 14, and 15, to run consecutively to each other and all other counts. (CRDoc. 280.)

On October 21, 2009, Movant filed a timely Notice of Appeal. (CRDoc. 276.) Movant raised four issues on appeal: (1) the court erred in not dismissing the indictment when the government failed to retain Osmund Sanchez as a witness, since he provided the basis for the search warrant in the case; (2) the court erred when it erroneously believed that it had no choice but to impose a 107-year sentence on the firearms counts; (3) the court erred in allowing the firearm sentencing statute to take precedence over the

---

[2] Movant and co-defendants were charged only in relation to 5 of the 21 aliens found being held hostage.

- 2 -

Sentencing Reform Act and imposed an incorrect sentence; and (4) the sentence imposed violated Movant's Eighth Amendment rights against cruel and unusual punishment. (Doc. 10, 9th Cir. No. 09-10430.) Movant's convictions and sentences were affirmed, and on December 28, 2010, the Ninth Circuit Court of Appeals (Ninth Circuit) entered its formal mandate. (CRDoc. 354.)

On May 22, 2012, Movant timely filed the instant Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (CVDoc. 1, CRDoc. 388) and memorandum (CVDoc. 2, CRDoc. 389).[3] Respondent filed a Response on September 14, 2012. (CVDoc. 8.) Movant filed a Reply on October 15, 2012. (CVDoc. 9.)[4]

**DISCUSSION**

In his Motion, Movant raises 8 grounds for relief. In Ground One, Movant claims that his trial counsel was ineffective because: (1) he failed to seek a jury instruction regarding voluntary intoxication, and (2) he acquiesced to continuances notwithstanding Movant's insistence on a speedy trial.[5] In Ground Two, Movant claims that his Fifth and Sixth Amendment rights were violated because: (1) Osmund Sanchez, a material witness who provided the basis for a search warrant, was deported prior to trial, and (2) other material witnesses were released without Movant being provided an opportunity to interview or depose them. In Ground Three, Movant challenges his convictions on the basis that evidence used to prosecute him was obtained from an unlawful investigatory stop in violation of the Fourth Amendment. In Ground Four, Movant challenges his

---

[3] In an Order filed on January 18, 2011 (CRDoc. 359), the Court granted Movant's motion for appointment of counsel and appointed attorney Michele Moretti to represent Movant in this action.

[4] Attached to Movant's Reply is a motion (CVDoc. 9-2), in which Movant seeks to expand the record with his affidavit. Finding the motion was improperly filed, the Court instead treats the affidavit as an exhibit of the Reply.

[5] In his motion, Movant further claims that trial counsel was ineffective because he failed to challenge the selection of a biased juror and the composition of the jury. However, in the Reply, Movant withdraws this claim (CVDoc. 9-1 at 6.), and therefore it will not be addressed herein.

- 3 -

convictions on the basis that evidence used to prosecute him was obtained from an unlawful search of premises in violation of the Fourth Amendment. In Ground Five, Movant claims that his rights to due process and a fair trial were violated because he was convicted after the government lost or destroyed material evidence, and the Court failed to give a jury instruction regarding that evidence. In Ground Six, Movant claims that he was convicted despite insufficient evidence because "the evidence against him was not strong, and the trial was infected with error." In Ground Seven. Movant asserts that the Court erred in failing to apply the rule of lenity, in believing that it had no choice but to impose a 137-year sentence, and in failing to consider certain sentencing factors. Lastly, in Ground Eight, Movant claims that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because it is disproportionate to his role in the crimes and is grossly disparate to the sentences received by his co-defendants.

In its Response, Respondent contends that Movant's claims of ineffective assistance of counsel should be denied because he fails to present anything beyond conclusory assertions to support them. Respondent further argues that certain claims are procedurally defaulted because Movant failed to raise them in a direct appeal, and others are precluded because they were adjudicated on direct appeal.

**I.    Ineffective Assistance of Counsel**

The two-prong test for ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on an ineffective assistance claim, a convicted defendant must show: (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Under the first prong, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. A defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citing Michael v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 691-92. The court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

First, Movant claims that trial counsel was ineffective when he failed to present evidence that Movant was intoxicated at the time of his offenses. Movant asserts that "[a]t various times during the events leading to the charges in this case, [he] had consumed a large amount alcohol and [he] was very intoxicated before and during [his] visits to 4210 S. 62 Lane in Phoenix, Arizona." (CVDoc. 9-3 at 1.) Although he had informed trial counsel that he was "drunk at the time of the offenses," counsel did not present this evidence to the jury. (Id.) Movant argues that if this evidence had been presented to the jury, it "may have negated requisite specific intent required for the crimes." (CVDoc. 2 at 11.)

Movant has failed to demonstrate that his counsel's performance was deficient. Presuming that a voluntary intoxication defense could have been considered by the jury to negate the specific intent required, Movant has not demonstrated that the choice not to present the defense was unreasonable given the lack of evidentiary support. This Court's

- 5 -

inquiry is not on what "defense counsel could have presented, [but] whether counsel's actions were reasonable." Turner v. Calderon, 281 F.3d 851, 877 (9th Cir. 2002). The only minimal evidence of intoxication Movant presents is his own claim that he was intoxicated. (CVDoc. 9-2.) Movant does not allege that there were other avenues counsel could have investigated to support an intoxication defense. Moreover, in that Movant contends that he was intoxicated at "various times," such evidence would not have been particularly probative of his mental state throughout the commission of offenses which occurred over an extended period of days or weeks. See Williams v. Woodford, 384 F.3d 567, 617 (9th Cir. 2004) (finding no ineffectiveness for failing to assert diminished capacity defense given lack of credible evidence of contemporaneous drug use). Cf. U.S. v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997) (finding court erred in failure to instruct on voluntary intoxication as a defense to aiding and abetting murder because "[t]here is no doubt that Joe laid the evidentiary groundwork for a defense of voluntary intoxication; the circumstances of his arrest alone make that clear.") "The law does not require counsel to raise every available nonfrivolous defense." Knowles v. Mirzayance, 556 U.S. 111, 127 (2009).

Second, Movant claims that counsel was ineffective when he "acquiesced" to trial continuances, denying him of a speedy trial. Movant was first indicted on June 18, 2008 (CRDoc. 18), and his case began trial on June 15, 2009 (CRDoc. 202.) Movant contends that as a consequence of excessive trial continuances, counsel afforded the Government an opportunity to file a superseding indictment, destroy potentially exculpatory evidence, and deport material witnesses.

In regards to initial trial continuances, Movant does not allege that they were unnecessary for the adequate preparation of his case. Rather, in moving jointly for a trial continuance on November 12, 2008 (CRDoc. 58), defense counsel requested additional time due to forthcoming discovery and adequate case preparation (CRDoc. 58), on which basis the motion was granted (CRDoc. 68). Contrary to Movant's allegations, the record also does not reflect that defense counsel "acquiesced" to subsequent continuances.

Defense counsel was clear and persistent in his objections to further trial continuances. On January 21, 2009, defense counsel moved the Court in opposition of a co-defendant's motion to continue trial. (CRDoc. 77.) During a status conference held on February 12, 2009, defense counsel reiterated that objection. In ultimately granting the continuance, the District Court reasoned,

> Counsel for Defendant Carlos Alvarez-Espinoza made clear … that his client opposes a continuance and requests that the Court hold a speedy trial. Because of the concerns of Defendant Alvarez-Espinoza, the Court examined its calendar, the current trial deadline under the Speedy Trial Act, and discussed scheduling with counsel. The current deadline under the Speedy Trial Act is April 21, 2009. Although the Court could start the trial earlier in April, counsel for Defendant Evaristo Ortiz-Jimenez has problems with the earlier date. The Court therefore concluded that the trial should start on April 22, 2009. Counsel for Defendant Alvarez-Espinoza conferred with his client and stated that Defendant Alvarez-Espinoza does not object to a trial commencing on April 22, 2009. The Court accordingly designated that date as a firm trial date for this case…
>
> The Court concludes that the failure to grant a continuance to April 22, 2009, would deny Defendants Ortiz-Jimenez and Ovando-Ocana the reasonable time necessary for effective preparation for trial, taking into account the exercise of due diligence. 18 U.S.C. § 3161(h)(8)(B)(iv). The Court accordingly will exclude the time between now and April 22, 2009, with respect to all Defendants in this case.

(CRDoc. 91.) Again, during a motion hearing held on April 14, 2009, defense counsel stated "in speaking to my client, he still wants trial April 22nd. And that's where I am." (CRDoc. 311 at 7.) At a motion hearing held on April 16, 2009, defense counsel echoed his objection to another trial continuance. In rejecting counsel's objection, the District Court stated,

> You have made it very clear, Mr. Mitchell, that you want the trial for Mr. Alvarez-Espinoza to begin on April 22nd. I have concluded on the basis of the legal arguments that have been made that I'm not going to grant the motion to sever, that all of the defendants will go to trial together. I'm persuaded that the additional information that has been received by defense counsel recently requires additional time for all of the defense counsel to be ready to go to trial, and since you are now going to trial with them, that's why I'm going to have the entire trial

> begin on June 15th. But I understand I am doing that over the objection of you, Mr. Mitchell, and your client, Mr. Alvarez-Espinoza.

(CRDoc. 312 at 54-55.) Consequently, any alleged error resulting from continuances of trial did not derive from counsel's deficient performance.

Furthermore, Movant has not demonstrated that but for the excessive trial continuances, the outcome of his case would have been different. First, the superseding indictment, filed on January 7, 2009 (CRDoc. 71) was filed prior to the February 10, 2009 trial date, and prior to the objected continuances. Second, if accepting a causal connection between the continuances and the destruction of evidence, the record again does not compel that the outcome would have changed. United States Immigration Customs Enforcement Special Agent Lee testified before the jury regarding two firearms seized.[6] (CRDoc. 316 at 72-73.) The agent testified that fingerprints were taken from these weapons, but "the lab found only partial prints and they couldn't match to any of the four defendants." (Id.) Thus, although the weapons were not physically presented at trial, any potentially exculpatory evidence they offered was presented to the jury. Consequently, preservation of the weapons would not have likely changed the outcome of the trial.

Lastly, Movant's claim relating to the deported material witnesses also fails. The Government found approximately 23 smuggled aliens inside the drop house. Six were detained as material witnesses for trial. Of the remaining aliens, one was prosecuted on illegal reentry charges and the others were deported. (CRDoc. 165 at 2.) Movant argues that by deporting some of the alien witnesses without making them available for interview or providing the defense with identifying information prior to their return, his Fifth Amendment right to due process and Sixth Amendment right to compulsory process

---

[6] One gun was seized from the vehicle in which Movant was found driving when he was apprehended, and the other gun was seized from the drop house. Prior to trial, these guns were sent down to U.S. Customs and Border Protection evidence vault in Nogales, Arizona and destroyed. (CRDoc. 316 at 72-73.)

was violated. However, as noted by the District Court, Movant only contends that the deported witnesses' testimony could have "conceivably" benefited him. (CRDoc. 165 at 3.) Movant has not presented in any form, such as a witness affidavit or investigation report, "some plausible showing how the deported witnesses' testimony would have been both material and favorable to his defense." (Id.) (internal bracket omitted). Movant merely speculates. Without more, Movant has not demonstrated that there is a reasonable probability that, but for the deportation of these witnesses, the result of the proceeding would have been different.

Finding that Movant has not established that counsel's performance was deficient or that prejudice resulted, the Court will recommend that Ground One be denied.

## II.     Procedural Default

A federal prisoner may seek relief under § 2255 if (1) his sentence was imposed in violation of the United States Constitution or the laws of the United States; (2) the sentencing court had no jurisdiction to impose the sentence on the prisoner; (3) the sentence imposed exceeded the maximum sentence authorized, or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A 2255 petition is an "extraordinary remedy," however, and "will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation omitted). See also United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) ("Section 2255 . . . is not designed to provide criminal defendants multiple opportunities to challenge their sentence."). If a prisoner could have raised a claim on direct appeal but did not do so, he has "procedurally defaulted" on that claim and cannot present it in a 2255 petition unless he shows (1) cause for failing to raise it on direct appeal and "actual prejudice" from that failure or (2) that he is "actually innocent." Bousley v. United States, 523 U.S. at 622 (citations omitted).

To demonstrate cause for procedural default, Movant must show "that some objective factor external to the defense" impeded his ability to comply with the procedural rule. Murray v. Carrier, 477 U.S. 478, 489 (1986). Ineffective assistance of

counsel may constitute cause for procedural default. Id.; United States v. Skurdal, 341 F.3d 921, 925-26 (9th Cir. 2003). "[I]f the record shows that an appellate counsel's performance fell below the standard of competency of counsel set forth in Strickland v. Washington, 466 U.S. 668 (1984), or that he was denied representation by counsel on appeal altogether, he has demonstrated cause for his procedural default." Skurdal, 341 F.3d at 925.

Movant concedes that he did not present Grounds Three through Six on direct appeal, but argues that appellate counsel's ineffectiveness in not raising these claims constitutes cause to overcome the default. (CVDoc. 9-1 at 8.) Here, appellate counsel raised four issues on appeal, and his decision to not raise these other issues may have been strategic, or may simply have been because he did not discern any other errors to raise. Nonetheless, appellate counsel is not constitutionally required to "raise every 'colorable' claim." Jones v. Barnes, 463 U.S. 745, 754 (1983). "A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court." Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997). See also Murray v. Carrier, 477 U.S. at 486 ("the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, ... we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." Murray v. Carrier, 477 U.S. at 488.

In Ground Three and Four, Movant claims that the investigatory stop and the search of premises which ultimately led to Movant's arrest were in violation of the Fourth Amendment. Prior to the commencement of trial, defense counsel raised these claims in motions to suppress. (CRDoc. 101 and 104.) After the conclusion of a hearing held on April 16, 2009, the District Court denied the motions and rejected these claims, and set

forth thorough reasoning for its rulings on the record. (CRDoc. 312 at 31-34, 36-37.) While Movant reiterates the basis for these claims, he does address in what manner the District Court erred in rejecting them. Movant therefore does not demonstrate that in failing to raise these arguments on direct appeal, appellate counsel's performance was deficient or that the result of the appeal would have been different. See Strickland, 466 U.S. at 687-88. There is no attorney error in refusing to raise issues on appeal that have little or no chance of success. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). Accordingly, Movant has not shown cause to overcome default on Grounds Three and Four.

In Ground Five, Movant claims that his right to due process and a fair trial were violated after the Government has destroyed exculpatory firearm evidence, and the court failed to give a requested jury instruction regarding that evidence. As previously addressed, preserving the weapons would not likely have changed the outcome of the trial. Therefore, Movant does not demonstrate that in failing to raise this claim on direct appeal, appellate counsel's performance was unreasonable or that prejudice resulted. Accordingly, Movant has not shown cause to overcome default on Ground Five.

Lastly, in Ground Six, Movant argues that there was insufficient evidence to support his conviction. In considering the totality of the trial record, Movant has not demonstrated that appellate counsel rendered constitutionally deficient assistance by failing to raise this claim. All five victim-witnesses stated that they were illegally in the United States and identified Movant in a photo lineup as one of the smugglers in the house. Two of the victim-witnesses identified Movant in the courtroom. (CRDoc. 392 at 38.) All five victim-witnesses testified that while they were being held at the drop house, they saw Movant in the house holding a gun. (CRDoc. 314 at 174; CRDoc. 315 at 52, 113, 154; CRDoc. 316 at 34, 39). Movant testified that he had been in the drop house several times. (CRDoc. 329 at 41.) Victim-witness testimony elicited that Movant transported smuggled aliens to and from the drop house, was on guard in the house to prevent them from escaping, and that Movant worked with others in the house as a part of

a team. (CRDoc. 315 at 126, CRDoc. 316 at 32-33.) Victim-witness testimony was presented that on one occasion, Movant was present when co-defendants assaulted two aliens and threatened to kill them when their family members did not answer the phone or refused to pay. (CRDoc. 314 at 144, 174.) Testimony was presented that on the day Movant was apprehended, he was driving a vehicle which had left the drop house and contained one of the victim-witnesses along with one of Movant's co-defendants. (CRDoc. 135 at 47-51; CRDoc. 314 at 57.) A victim-witness testified that prior to being pulled over by the police, Movant put a gun he was holding in the back seat. (CRDoc. 135 at 47-51.)  Evidence was presented to the jury including a notebook seized at the residence site containing a list of aliens who had been or were in the drop house[7] (CRDoc. 314 at 165) and a jail phone conversation recording in which Movant discussed having fingerprints one of the weapons (CRDoc. 314 at 192).

Based on this evidence, a rational trier of fact could have found that Movant committed (or aided and abetted) and conspired to harbor illegal aliens, detain them at gunpoint, and threaten to kill, injure or continue to detain them in order to compel a third person to pay money for their release. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (evidence offered to support a conviction is sufficient if, viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt). Based upon the improbability of success on appeal had counsel raised this claim, Movant has not demonstrated prejudice. Movant has demonstrated neither deficient performance nor prejudice, and therefore, has not shown cause to overcome default on Ground Six.

The Court finds that Movant has not established cause and prejudice for his default and he does not raise the miscarriage of justice exception. Accordingly, the Court

---

[7] The list, referred to as the "pollo list," listed next to some of the names numbers, considered to be the amount they owed to the smugglers, notations of whether fees had been collected, bank account numbers, and family cell phone numbers. (CRDoc. 314 at 165.)

will recommend that Grounds Three through Six be denied as procedurally defaulted.[8]

**III.    Preclusion**

"Section 2255 . . . is not designed to provide criminal defendants multiple opportunities to challenge their sentence." United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993). An issue raised and decided on direct appeal is binding on an appellate panel's review of denial of habeas relief. United States v. Scrivner, 189 F.3d 825, 828 (9th Cir. 1999). In the context of a § 2255 petition, that Ninth Circuit law precludes relitigation of a matter adversely decided on direct appeal from a federal conviction. Id. at n.1 (citing United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985), and United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979)). Thus, matters decided on direct appeal in a federal conviction cannot be collaterally attacked in a subsequent § 2255 proceeding. Redd, 759 F.2d at 701 (noting that petitioner "raised this precise claim in his direct appeal, [that] this court expressly rejected it[, and that] this claim cannot be the basis of a § 2255 motion" (citing Egger v. United States, 509 F.2d 745, 748 (9th Cir. 1975))); Currie, 589 F.2d at 995 (noting that "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding" (citing Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972))).

   **A.    Ground Two**

In Ground Two, Movant claims that his Fifth and Sixth Amendment rights were violated because Osmund Sanchez, a material witness who provided the basis for the search warrant, was deported prior to trial. This argument was raised on direct appeal (9th Cir. No. 09-10430, Doc. 10 at 28-32), and rejected by the Ninth Circuit (CRDoc. 354-1 at 2-3). The Ninth Circuit reasoned that "Alvarez-Espinoza must show that the government acted in bad faith and caused prejudice to his case, and as conceded at oral argument, he

---

[8] The Court also notes that in Ground Two, Movant claims that, notwithstanding Osmund Sanchez, other unnamed material witnesses were released without defense interviews, depriving him of his right to due process. The Court finds that this argument was also not raised on direct appeal. However, Movant has not shown that prejudice resulted from appellate counsel's failure to raise this claim. See supra at p. 8.

cannot make any such showing. See United States v. Gastelum-Almeida, 298 F.3d 1167, 1174 (9th Cir. 2002)." (Id.)

In his Reply, Movant argues that subsequent to direct appeal, the Ninth Circuit issued United States v. Leal-Del Carmen, 697 F.3d 964 (9th Cir. 2012), which has "undoubtedly affected assessment of [this] issue." (CVDoc. 9-1 at 7.) However, as noted in Movant's Reply, the Ninth Circuit in Leal-Del Carmen was confronted with the same issues, applied preexisting precedent, and arrived at the same conclusion as in U.S. v. Ramirez Lopez, 315 F.3d 1143 (9th Cir. 2003). Leal-Del Carmen does not abrogate the Ninth Circuit's decision in the instant case. Because Movant's claim has already been decided by the Ninth Circuit, he cannot relitigate here. Therefore, the Court will recommend that Ground Two be denied.

### B.     Ground Seven

In Ground Seven, Movant argues that the court erred in failing to apply the rule of lenity, in believing that it had no choice but to impose a 137-year sentence, and in failing to consider certain sentencing factors. Movant raised these arguments on direct appeal (9th Cir. No. 09-10430, Doc. 10 at 33-45.) In dismissing these challenges, the Ninth Circuit reasoned:

> The district court imposed 18 U.S.C. § 924(c)(1)(A)(ii)'s mandatory minimum seven-year sentence consecutive to the greater mandatory minimum sentences required by the subsequent firearms convictions on other counts. Alvarez-Espinoza contends this was error. The issue is the same as that recently decided by the Supreme Court in Abbott v. United States, 131 S.Ct. 18 (2010). The Court held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." Id. at *5. There was no error.
>
> Alvarez-Espinoza also contends the district court erred when it stacked the § 924(c) sentences related to the brandishing of a firearm. There was no error because under our circuit's law, "when the government charges more than one § 924(c) offense in a single indictment, each additional count is to be treated as a 'second or subsequent conviction' for purposes of 18 U.S.C. § 924(c)(1)(C)(i) and therefore carries a mandatory minimum sentence of twenty-five years. Because § 924(c)(1)(D)(ii) requires that 'no term of imprisonment

>imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed,' each independent § 924(c) count in the indictment imposes a consecutive sentence in addition to any other sentence imposed, either under § 924(c) or under any other counts for which the defendant has been convicted." United States v. Beltran-Moreno, 556 F.3d 913, 915 (9th Cir. 2009) (emphasis in the original). We have also recently held "that a sentencing court may not depart below statutory minimums based upon the § 3553(a) factors." United States v. Wipf, 620 F.3d 1168, 1171 (9th Cir. 2010). Alvarez-Espinoza's argument that the court should have done so in this case is therefore foreclosed.

(CRDoc. 354-1 at 2-3.)

Movant cites to United States v. Major, issued by the Ninth Circuit subsequent to direct appeal. 676 F.3d 803, 815 (2012) (holding that "when the district court does not have sufficient information to determine the order in which the jury made determinations of guilt during jury deliberations on multiple counts under section 924(c), it must order the convictions so that the mandatory minimum sentence is minimized." There, "application of the rule require[d] the district court to deem one of the brandishing counts, rather than a discharging count, to be the first conviction."). Here, Movant's "first conviction" was a brandishing count; there was no alternative by which the mandatory minimum sentence could have been minimized. (CRDoc. 318 at 8-9.) Consequently, Major does not impact the Ninth Circuit's decision in this case. Accordingly, because theses claim have already been decided by the Ninth Circuit, Movant cannot relitigate them here. Therefore, the Court will recommend that Ground Seven be denied.

### C. Ground Eight

In Ground Eight, Movant claims that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because it is disproportionate to his role in the crimes and is grossly disparate to the sentences received by his co-defendants. Movant raised this argument on direct appeal. (9th Cir. No. 09-10430, Doc. 10 at 45-49.) The Ninth Circuit dismissed this claim, finding it was foreclosed by United States v. Harris, 154 F.3d 1082, 1084 (9th Cir. 1998) ("A sentence which is within the limits set by

a valid statute may not be overturned on appeal as cruel and unusual.") (citations, brackets, and internal quotation marks omitted). (CRDoc. 354-1 at 3.) As with Grounds Two and Seven, this claim has already been decided by the Ninth Circuit, and therefore, Movant cannot relitigate it here. Therefore, the Court will recommend that Ground Eight be denied.

**IV.     Evidentiary Hearing**

To earn the right to a hearing, Movant must "allege specific facts which, if true, would entitle him to relief." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996). The Court concludes that Movant is not entitled to an evidentiary hearing on his claims because "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b).

## CONCLUSION

Having determined that the claims presented in the motion are procedurally defaulted, precluded, or fail on the merits, the Court will recommend that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be denied.

**IT IS THEREFORE RECOMMENDED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CRDoc. 388, CVDoc. 1) be **DENIED** and that **CV-12-01083-PHX-DGC (SPL)** be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the motion is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation

within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

Dated this 14th day of February, 2013.

Honorable Steven P. Logan
United States Magistrate Judge